IN THE

## EASTERN DISTRICT, AT NEW ORLEANS,

FROM THE 20TH MAY TO THE 12TH JULY, 1844.

PRESENT:

Hon. HENRY ADAMS BULLARD.
Hon. ALONZO MORPHY.
Hon. EDWARD SIMON.
Hon. RICE GARLAND.

PIERRE A. ST. MARTIN *v.* HIS CREDITORS.

The mere incompetency of a person to testify as a witness in a cause, will not authorize a court to exclude from its consideration the legal inferences which might otherwise be drawn from acts done by him, at a time when it is impossible to suppose that any of the parties were manufacturing evidence for the cause.

APPEAL from the District Court of the First District, *Buchanan,* J.

*S. L. Johnson,* for the appellants. The case was submitted, without argument on behalf of the appellee.

MORPHY, J. Six of the minor children of the late Pierre Bauchet St. Martin, jr., made opposition to the tableau of distribution filed in this case, claiming to be placed thereon as mortgage creditors for the sum of $2540. This sum, they allege, accrued to them from the succession of their grandfather, and was

received in June, 1834, by their late mother and tutrix, whose estate having been accepted purely and simply by the insolvent, their brother, passed into his hands, subject to their legal mortgage. The statement of facts shows, that Pierre Bauchet St. Martin, sen., grandfather of the opponents as well as of the insolvent, died in 1831, leaving descendants, all grand-children, fourteen in number; ten of them descended from him through his son, Pierre Bauchet St. Martin, jr., and four through his daughter, who had married Dr. Ives Lemonier; that the property of the deceased yielded upwards of fifty thousand dollars; that no final settlement or partition of the estate has yet been made, but as there were debts to a considerable amount, it is admitted that a sum considerably less than that claimed by the opponents, accrues to each heir; that notes to the amount of $17,706 84 proceeding from the sale, came into the hands of Moreau Lislet, who was the attorney of the heirs; that he delivered these notes to Dr. Ives Lemonier, the father and tutor of four of the heirs; that of the ten children of Pierre Bauchet St. Martin, jr., only the insolvent and his brother, F. B. St. Martin, were of age; that the other eight were represented by their mother and natural tutrix, until the year 1833, when she died; that two of her children, Genevieve and Héloïse, died shortly after her, and the six remaining are the opponents in this case; that when Pierre Bauchet St. Martin, jr., died, in 1830, the community property was adjudicated to his widow, at its appraised value in the inventory; and at her death, in 1833, the insolvent and his brother, F. Bauchet St. Martin, who has also failed since, accepted her succession purely and simply; that on the 16th of June, 1832, the insolvent gave a written authorization to Moreau Lislet, to receive from René Lemonier, the executor of his brother, Ives Lemonier, $2540, on account of the sum of $17,706 84 in notes, which had been deposited with the deceased, and belonged equally to all the grand-children of the late Pierre Bauchet St. Martin, sen.; in which order Moreau Lislet was requested, as soon as he received this sum, to pay and take up a draft of a like amount, drawn by P. A. St. Martin, the insolvent, on Byrne, Ryon & Co., to the order of F. A. Blanc, payable on the 13th of June, 1832; that P. A. St. Martin, who was their brother, was in all this acting as the agent of their mother

and tutrix, for whose benefit and accommodation this draft was drawn and afterwards paid; that she thus received this amount which was coming to them from the succession of their grandfather, and that therefore, they are entitled to be paid the amount with legal interest, out of the proceeds of the property derived by the insolvent by inheritance from their mother. The judge below dismissed their opposition, being of opinion that the evidence adduced was not sufficient to support it, and they have appealed.

Charles Byrne and Theodore Ryon, of the firm of Byrne, Ryon & Co., testified that they had been the factors of the widow St. Martin, the mother of the opponents, but transacted all her business through her son, P. A. St. Martin, with whom they always treated as her agent; that on the 20th of March, 1832, they accepted the draft of $2540, drawn on them by P. A. St. Martin, and charged it in their bill-book to his mother, the widow St. Martin, as being the person for whose accommodation the acceptance was made; that in 1833 they rendered to her an account, in which they charged her a commission for accepting this draft which they paid at maturity, but of which, the amount was reinbursed to them by Moreau Lislet, the same day, or the day after it had been paid; that all the items for supplies set forth in their account were charged to the widow St. Martin, for the use of a plantation she owned, and that all the notes and drafts therein mentioned were for her account, although signed by her son, P. A. St. Martin, in his own name, and that he paid them the balance stated in the account as due by his mother; that at the time of the acceptance of this draft, and up to the death of the widow St. Martin, there was no account opened with the insolvent, who, they believe, was living with his mother on her plantation; that they never had any communication with her except through her eldest son, the insolvent, who was in the habit of transacting all her business with their firm.

This evidence sufficiently shows, we think, that this draft of $2540 was for the account and accommodation of the widow St. Martin, and that the money which Moreau Lislet applied to its payment was in fact received by her. We must come to this conclusion, unless we suppose a long continued and concealed fraud practiced by the insolvent upon his mother, a supposition

which nothing in the record is calculated to sanction. The district judge thought, that as the insolvent could not be sworn as a witness in this case, his acts, although done long previous to his insolvency, were not to have any weight or bearing, nor to authorize the legal inferences that such acts would otherwise warrant. Admitting that the insolvent would not have been a good witness to prove that this money was received by his mother for the account of the opponents, although this is by no means clear, as he would be testifying against his own interest, his acts which are relied on to show this fact, should have their due weight, as they took place at a time when it is impossible to suppose that any of the parties were manufacturing evidence for this case. But the record exhibits another corroborating circumstance, which renders it altogether improbable that René Lemonier would have advanced to P. A. St. Martin, for his own account, $2540, out of the funds of the estate of his grandfather. It is shown that, at the probate sale of the succession, the insolvent, and his brother F. B. St. Martin, who were the only heirs then of age, bought property to an amount much larger than their probable portion as heirs of their grandfather, which, it is admitted, will fall much short of the amount claimed. This circumstance is conclusive to our minds, that P. A. St. Martin would not have asked, much less René Lemonier have paid, this amount of $2540, on the order of the insolvent, had it not been well understood that it was for the use and benefit of the mother and tutrix of the minors St. Martin, who had as yet received no portion of their grandfather's estate. The claim of the opponents should, we think, be allowed, after deducting from it the sum coming to each of the insolvents, P. A. St. Martin and F. Bauchet St. Martin, as heirs of their deceased sisters, Héloise and Genevieve.

It is therefore ordered, that the judgment of the District Court be reversed; and proceeding to give such judgment, as in our opinion should have been rendered below, it is ordered that the tableau of distribution be amended, and the opponents placed thereon as mortgage creditors for $2381 25, with legal interest from the 18th of June, 1832, on the property formerly belonging to their tutrix and surrendered by the insolvent; the costs to be

borne by the estate; and the tableau so amended to be finally homologated.